UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL ROSNER,

                              Plaintiff,          Case # 18-CV-204-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Paul Rosner brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On January 16, 2014, Rosner protectively applied for DIB with the Social Security Administration ("SSA"). Tr.[1] 168-78. He alleged disability since April 1, 2013 due to memory loss, diabetes, hypercholesterolemia, bilateral hip and knee pain, peripheral neuropathy, and degenerative disc disease. Tr. 200-01. On July 28, 2016, Rosner and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Michael Carr. Tr. 35-85. On September 27, 2016, the ALJ issued a decision finding that Rosner was not disabled within the

---

[1] "Tr." refers to the administrative record in this matter.

meaning of the Act. Tr. 10-23. On December 12, 2017, the Appeals Council denied Rosner's request for review. Tr. 1-6. Thereafter, Rosner commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Rosner's claim for benefits under the process described above. At step one, the ALJ found that Rosner had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Rosner has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spines; diabetes mellitus, type II; and neuropathy. Tr. 12-15. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal a Listings impairment. Tr. 15-16.

Next, the ALJ determined that Rosner retains the RFC to perform light work[2] with additional limitations. Tr. 16-21. Specifically, the ALJ found that Rosner can stand and walk for two hours total in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; cannot be exposed to unprotected heights, moving mechanical parts, or uneven terrain; and needs a cane for balance and ambulation. Tr. 16.

At step four, the ALJ relied on the VE's testimony and found that Rosner can perform his past relevant work as a loan application clerk and customer complaint clerk. Tr. 22-23. Accordingly, the ALJ concluded that Rosner was not disabled under the Act. Tr. 23.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

**II.     Analysis**

Rosner argues that remand is required because the ALJ improperly weighed the opinion of his treating physician Amrit Singh, M.D. ECF No. 8-1 at 14-16; ECF No. 11. The Commissioner maintains that the ALJ properly weighed this opinion (ECF No. 10-1 at 20-23), and the Court agrees.

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

On February 8, 2016, Dr. Singh completed a Medical Source Statement that assessed Rosner's ability to perform work activities on a regular and continuous basis. Tr. 487-92. Dr. Singh opined that Rosner can sit for two hours total in an eight-hour workday and for 15 minutes at one time before he needs to walk for up to 15 minutes; can stand or walk for three hours total in an eight-hour workday and for 30 minutes at one time before he needs to lie down for 15 minutes; and must rest to relieve pain for a total of two hours during an eight-hour workday in addition to normal breaks. Tr. 487-89.

Dr. Singh also opined that Rosner can frequently lift and carry one to five pounds, occasionally lift and carry six to ten pounds, and rarely or never lift or carry 11 to 50 pounds. Tr. 489. He further indicated that Rosner's impairments affect his ability to balance, stoop, handle, finger, feel, push, pull, and tolerate heights, moving machinery, temperature extremes, humidity, and vibration. Tr. 490-91. Dr. Singh concluded that these restrictions have existed since at least 2013 and that Rosner's diagnoses of low back pain, lumbar disc injury, lumbar radiculopathy, and myofascial pain supported his assessment. Tr. 491-92.

Rosner contends that the ALJ should have afforded controlling weight to Dr. Singh's opinion, but he offers little to demonstrate that the opinion is well-supported and consistent with other substantial record evidence, and he does not argue that the ALJ failed to provide good reasons for discounting the opinion. *See* 20 C.F.R. § 404.1527(c)(2).

The ALJ's decision acknowledged Dr. Singh's treating opinion and afforded it only "little weight." Tr. 19-20. Specifically, the ALJ discounted the opinion in part because "the extreme limitations . . . are not given a rationale." Tr. 20. This was a proper reason to discount Dr. Singh's opinion, because the SSA's regulations authorize the ALJ to afford less weight to an opinion that lacks support and is not well explained. *See* 20 C.F.R. § 404.1527(c)(3).

Although the opinion form contained space for Dr. Singh to provide the findings supporting his assessment, Dr. Singh provided little information. He merely noted "carpal tunnel symptoms" in support of his assessed handling, fingering, and feeling limitations and "low back pain" and "impaired ambulation" in support of his assessed pushing and pulling limitations. Tr. 490. He did not provide any findings to support his assessed environmental limitations. Tr. 491. Accordingly, the Court finds that the ALJ did not err when he discounted Dr. Singh's opinion based on the weak supporting explanation.

The ALJ also discounted Dr. Singh's opinion based on its consistency with the record as a whole, which he was entitled to do under the regulations. Tr. 20; *see* 20 C.F.R. § 404.1527(c)(4). Specifically, the ALJ found Dr. Singh's opinion inconsistent with "other substantial medical evidence of record" and he found Dr. Singh's treatment notes "significantly inconsistent with contemporaneous treatment notes . . . of other physicians." Tr. 20.

As an example, the ALJ summarized Dr. Singh's treatment notes from November 9, 2015, which documented that Rosner had pain with range of motion in the lumbar spine, a forward stooped posture, impaired reflexes, unsteadiness, and decreased muscle bulk in the left quad. Tr. 20 (citing Tr. 457). Dr. Singh also indicated that Rosner continued to use a cane on the right and may benefit from using bilateral forearm crutches. *Id.* Just a few weeks later on December 16, 2015, another provider—Dr. Baljinder Singh—examined Rosner. Tr. 20 (citing Tr. 481). In contrast to Dr. Singh's abnormal findings, Dr. Baljinder Singh found Rosner to have full strength, normal muscle tone and bulk, normal reflexes, normal sensory and coordination examinations, and normal gait without cane use. *Id.* The ALJ pointed out that Dr. Baljinder Singh documented the same normal findings at an examination on May 9, 2016. *Id.*; *see also, e.g.*, Tr. 277, 279, 293,

7

295, 421-22, 427-29, 481 (additional treatment notes from Dr. Baljinder Singh documenting unremarkable examination findings).

Reports from another provider—Dr. Madhav N. Deshmukh—also contradict Dr. Singh's findings. Many of Dr. Deshmukh's treatment notes indicate that Rosner denied symptoms and contain normal or unremarkable objective findings. *See, e.g.*, Tr. 383-84, 425, 435-36, 438-39, 441-42, 494-96, 499-500, 503-04. The opinion from consultative examiner Dr. Hongbiao Liu is also much less restrictive than Dr. Singh's opinion and indicates only that Rosner has moderate limitation in his ability to engage in prolonged walking, bending, kneeling, and overhead reaching.[3] Tr. 408. Accordingly, the Court finds that the ALJ did not err when he discounted Dr. Singh's opinion based on its inconsistency with other record evidence.

Finally, Rosner asserts that the ALJ "ignored the report of Dr. Cappuccino." ECF No. 8-1 at 15 (citing Tr. 305). The report that Rosner refers to indicates that Dr. Cappuccino saw Rosner for a lumbar spine evaluation and discusses his x-ray and MRI results. Tr. 305. But Dr. Cappuccino did not render an opinion as to Rosner's ability to work, and therefore the ALJ did not have to provide a specific evaluation of that report. *See Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source."); 20 C.F.R. § 404.1527(c). Moreover, "[a]n ALJ does not have to state on the record every reason justifying a decision" or "discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Black v. Apfel*, 146 F.3d 383, 386 (8th Cir. 1998)). If an ALJ does not cite specific evidence, it does not mean that the evidence was not considered. *Id.* Additionally, as the Commissioner points out, it is undisputed that Rosner had back issues and the ALJ

---

[3] Rosner does not argue that the ALJ improperly weighed Dr. Liu's opinion.

8

acknowledged this by finding that his degenerative disc disease constituted a severe impairment. The ALJ also noted other MRI reports that confirmed this impairment. Tr. 17 (citing Tr. 416-17, 419). Thus, the Court finds that the ALJ did not err by not explicitly citing Dr. Cappuccino's report.

For the reasons stated, the Court finds that the ALJ did not violate the treating physician rule and that he gave appropriate reasons for discounting Dr. Singh's opinion.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 16, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court